The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick, the briefs and the arguments of the parties. The appealing party has shown good grounds to reconsider the evidence but after careful consideration and review the undersigned find no good grounds to receive further evidence, rehear the parties, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. On 21 March 1996, the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. ITT Hartford was the workers' compensation insurance carrier on the risk at the time of the alleged injury.
4. A set of documents attached to the parties' Pre-Trial Agreement, including Industrial Commission forms, defendants' discovery responses, plaintiff's discovery responses and plaintiff's medical records, is admitted into evidence.
5. The depositions of Robert Lee Boothe, M.D. and Dale W. Boyd, M.D. are a part of the evidentiary record.
 * * * * * * * * * * *
Based upon all of the competent evidence of record, the Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a full-time student. He also worked for an employer who provided residential and commercial pressure cleaning services.
2. In December 1995, plaintiff sustained a left knee injury while skiing in New York. Plaintiff's injury occurred when he fell and his left ski failed to disconnect from his ski boot causing his knee to twist. Plaintiff heard a popping or snapping sound from his left knee when he fell. As a result of that injury he received treatment from Dr. Boothe on at least two occasions. Dr. Boothe initially diagnosed plaintiff's injury as an internal derangement. However, due to the large effusion resulting from the injury, Dr. Boothe was unable to perform the clinical tests usually conducted to diagnose the exact nature of knee injuries. Dr. Boothe recommended that plaintiff receive a MRI. That study was not accomplished because plaintiff returned to North Carolina shortly thereafter.
3. Plaintiff became employed by defendant-employer as a soil and concrete technician on 26 February 1996. Defendant-employer performed testing for the construction industry, including tests to determine "slump" for large cement pours. One of plaintiff's duties was to perform these "slump" tests for defendant-employer. Plaintiff gained experience performing similar tests while employed by another employer, Soiltech Engineering. When plaintiff applied for employment with defendant-employer he was wearing a knee brace.
4. On 21 March 1996, plaintiff was assigned to take and test cement samples from a construction project at the Sweeny Water Treatment Plant in Castle Hayne, North Carolina. The water plant construction project was being overseen by Atlantic Coast Mechanical.
5. Prior to going to the construction site to take and test samples, plaintiff learned what amount of cement was to be poured on the day in question. With this information, plaintiff was able to calculate the number of samples that would be necessary to properly test the cement. Plaintiff received directions to go to construction sites and position himself and his equipment near the pour site where he would have access to the trucks entering the site to pour cement. Plaintiff was directed to take his samples directly from the chute or pipe from which the cement was poured. On 21 March 1996, cement was to be poured for the pads upon which large tanks would later be erected.
6. On 21 March 1996, having determined how many samples he would have to take, plaintiff drove to the site and unloaded his sampling equipment. He placed his sampling equipment into a wheelbarrow and carried his supplies to a location near the pour site, along the road or path that would be traveled by the concrete trucks. The cement trucks had not arrived on the construction site by the time plaintiff completed his sampling preparations.
7. Mr. McQueen was employed by Atlantic Coast Mechanical as a field superintendent. Mr. McQueen was familiar with defendant-employer and knew that it had been hired by an engineering group to serve as an on site inspector of the construction project. He did not know plaintiff, but had seen him on the construction site prior to 21 March 1996. Mr. McQueen knew that plaintiff was employed by defendant-employer and was responsible for obtaining cement samples.
8. While waiting for the cement trucks' arrival, plaintiff went to an area of the construction site that was between 100 and 120 feet from the tank pad pour site. Plaintiff climbed onto a wall that was approximately four feet high.
9. Mr. McQueen observed that plaintiff was on the wall, in an area of the construction site where defendant-employer was not performing tests or other work. Mr. McQueen shouted to plaintiff from a distance, asking what he was doing in the area. Plaintiff responded that he was "looking around". In a stern or angry manner, Mr. McQueen then shouted for plaintiff to "get out" of the area. Plaintiff replied, "You can't talk to me like that." Plaintiff then began moving toward Mr. McQueen. He jumped down from the wall in the direction of Mr. McQueen. When he landed, he fell to the ground. Mr. McQueen observed that plaintiff was in pain and went to his assistance. Plaintiff explained that he had injured his left knee on a prior occasion.
10. Plaintiff was assisted away from the job site. The following day, he presented to the Cape Fear Memorial Hospital emergency department. He later came under the care of Dr. Boyd. Plaintiff underwent surgery by Dr. Boyd on 17 May 1996. The surgery consisted of "anterior cruciate ligament reconstruction with bone, patella bone autograft, medial meniscus repair for complex bucket-handle tear of his medial meniscus and a partial lateral meniscectomy for degenerative flat tear."
11. Despite his knee condition, plaintiff continued working for defendant-employer who provided him with light duty laboratory work. He also performed some light duty work in the field.
12. At 7:20 a.m. on 14 May 1996, plaintiff telephoned defendant-employer and left a message on the answering machine. In his message, plaintiff stated that he had injured his knee while getting out of bed and therefore wanted to rest his knee before going to work. He stated that he would call again later about working. He did not call again until 4:00 p.m. At that time he spoke to his supervisor and stated that he had been to the hospital to have fluid drained from his knee. He stated that he had been to the emergency room where he was required to wait all day for treatment.
13. Plaintiff did not injure his knee getting out of bed on 14 May 1996. He did not intend to rest his knee before reporting to work. He did not go to the emergency room to have fluid drained from his knee. Rather, he went to Greenville, North Carolina to accompany his girl friend to a physician's appointment. After some investigation, plaintiff's supervisor determined that plaintiff intentionally misrepresented the reason for his absence from work. When confronted by his supervisor, plaintiff admitted that he had lied about his knee's condition and his receipt of medical treatment. Defendant-employer terminated plaintiff's employment due to his intentional deceitfulness.
14. Plaintiff returned to work for another employer on 1 September 1996, earning wages equal to or greater than the wages he earned from defendant-employer.
15. On 21 March 1996, defendant-employer was not performing tests or other work in the immediate vicinity of the wall. Plaintiff's assigned task did not require him to be on or near the wall. Plaintiff went to the wall to satisfy his personal interest in construction site activities which were wholly unrelated to defendant-employer's business or plaintiff's employment. Plaintiff's assigned tasks required him to be in the immediate vicinity of the pour site to take samples from the cement trucks, not on the wall.
16. Plaintiff substantially departed from his employment with defendant-employer when he walked 100 to 120 feet from his assigned area on a construction site and then leapt from a wall and engaged in an angry confrontation with Mr. McQueen.
17. Defendant-employer received no benefit from plaintiff's presence on the wall away from his assigned work area or from his confrontation of Mr. McQueen.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSION OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. Therefore, Plaintiff is not entitled to compensation under the North Carolina Workers' Compensation Act. G.S. § 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of Deputy Commissioner Hedrick and enters the following
 O R D E R
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs, except that defendants shall pay Dr. Boyd $400.00 as an expert witness fee, if not already paid.
This the ___ day of December.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER DCS: nwg